Our final case of the day is Valentino v. Clarke. Mr. Haywood. Good to have you here, sir. Good morning. Brad Haywood on behalf of the appellant, Mr. Valentino. May it please the court. The question presented before this court is twofold. First, did the district court have granted an evidentiary hearing, discovery, and additional forensic testing? Secondly, was it error to then deny the petition for writ of habeas corpus without granting discovery, testing, and a hearing? Briefly, I think the court is aware of the facts. But essentially, what was at issue here was a criminal case in which Mr. Valentino was convicted of robbery and malicious wounding. The convictions arose out of an incident that occurred at a hotel room. Mr. Valentino was visiting a prostitute. That much was conceded. From there, the accounts differed with Mr. Valentino. Now, this is a state court prosecution, and your client was convicted. And you want federal habeas corpus relief, claiming the lawyer in the state prosecution was Sixth Amendment violational as to your client, right? That's right. Yes. That's the whole thing. It is. It's whether he failed in his duty to properly represent your client. That's right. And what was at issue here? And this trial, was this a swearing match? More or less. It was. And because of the errors of trial counsel, there was virtually no forensic evidence to corroborate either account. Now, it was a swearing match. It was the account of the- Well, there was some forensic evidence. It was minimal, and I don't think it was particularly prohibitive of the issues in the case. They had some stuff about the sock and the boot? There was forensic evidence that was recovered from the boot. So it was tested. It found that there was lead residue that was around the opening of the boot. And they also found that the blood that was found inside the boot contained Mr. Valentino's DNA, which was for the swab. Sorry, it wasn't necessarily blood, but it was swabbed from an area where there was found blood. It was determined that contained Mr. Valentino's DNA and also a mixture profile. It was not able to be parsed, or at least it didn't submit it for testing that would have allowed determination of who the mixture pertained to or where it arose from. So you say that it was defective performance and your client was prejudiced because the state court lawyer didn't do more testing in the state court? That's right, yes. Well, the government says that, as I read their brief, that that was an understandable strategic choice. I kind of tried to keep a track of all the different stories from Mr. Valentino of what transpired over time, and I gave up. And the upshot of that was that maybe trial counsel did the same and trial counsel decided that if I do this, I've lost the ability to argue that the police investigation was unfair, which he did with some force in the trial court. So why wasn't, under the circumstances, that a valid decision by trial counsel? So I think that what was omitted from trial, well, first of all, dealing with the strategic decision. As the court is aware, a strategic decision can't be based on inadequate investigation. There's a precedent from this circuit that says that. Winston B. Kelly, which is particularly applicable to this case, said exactly as much. But that's what state trial counsel argued at pages 490 and 491 of the appendix, that the investigation was so unfair by the police and so one-sided that the jury should consider that as prejudicial to his client. And later he stated in post-conviction proceedings, or pre-sentencing post-conviction proceedings, he stated that he simply had not requested forensic testing and it was negligence on his part. It was by no means a strategic decision he made. He was forced into that scenario where he had a decision to make about, am I going to go forward with the inadequate forensic evidence that I've failed to develop? Or am I going to rely on the better theory now that I have fallen down the drop, essentially? Did the state habeas court rule in your favor on the performance problem? It did, yes. Are we bound by that? I believe you are. So if you're right on that, you come in here and you prevail on the performance problem in the state court, and then you want us to rule with you on the prejudice problem. That's the only issue. Yes, it is. The prejudice problem is the only issue. That's right. And if the state tried to appeal on the prejudice, on the performance problem, they lost it. That's correct. The Supreme Court wouldn't take it. That's right. But trial lawyers, we give a lot of sway to what they're doing in the middle of the fight, the dispute. They have to make a lot of snap decisions and trial tactics. We give them a lot of deference. Clearly. And I guess the second part of what I was getting at in discussing this allegedly strategic decision that was made by trial counsel was there was one fact that was, I think it's roundly acknowledged, the most persuasive kind of evidence that's out there today is forensic evidence, and the gold standard of forensic evidence is DNA. And when you have that available to you and you choose not to obtain that, and that is there in order to basically wipe away all of these inconsistencies that were alleged by the Commonwealth, that were made in statements allegedly by my client, Mr. Valentino, when that's there and trial counsel doesn't avail himself of that, the power of that, I think it is inconceivable. And quite frankly, the Commonwealth agreed with this. It's this ricochet theory that was thrown out there. There were two accounts. Mr. Valentino said he shot at her from a distance. Sorry. Ms. Islam said Mr. Valentino shot at her from a distance. Mr. Valentino said they were up close, engaged in a struggle, went straight down through her leg and into his foot. The Commonwealth discussed a potential ricochet theory, accounting for the circumstantial evidence. So you agree it was a one-shot deal? Yes. And the one shot was from his pistol? It was. And it struck them both? Yes. That is what we contend. However, I don't believe the jury found that. I'm sorry. I'm sorry. No, no, please. I'm just going to say, well, the jury found the view most favorable to the prosecution. Whatever that is. Which I believe clearly from the evidence, because they could not have accepted the ricochet theory. They couldn't have accepted the ricochet theory. I don't believe so. We'll see what the evidence says. Go ahead, Judge Richard. I'm sorry. I didn't mean to talk over you. But the other theory is that it's not one shot. In fact, it was two shots. That your client shot Ms. Islam. And then after leaving the hotel in an attempt to cover up what he did, that he shot himself in the foot. Right? As a cover-up scheme. That theory was also. I get that there were lots of theories presented. But the only theory. A single shot is not the only theory that's been presented. This theory, I think, is what the jury must have found. That's really the only other plausible theory. But they did find also that your client lied a lot. I don't know the jury's reasoning. Well, they found the view most favorable to the prosecutor. And that was that he was lying. He told all kinds of stories. Obviously, they convicted him, so I think that's. Yeah, he told all kinds of stories. Yes. Didn't he tell the police at one point in the investigation that he shot himself? During the struggle, yes. And quite honestly, during an incident like that, if you're fighting for your life over a handgun, I think processions tend to be clouded. Again, that's well-recognized by the law. But with respect to what Your Honor was mentioning, this second theory, there were two shots. Well, think about what that would have required. Because the forensic evidence that was produced showed that there was both the impact of the boot and the mark on Mr. Valentino's foot were consistent with a slow-moving projectile, so one that, for example, would have gone through something else first. Like a pillow or something else that he put on top of his foot? Perhaps, but how do you match? How does Mr. Valentino, a relatively unsophisticated man, how does he know that he needs to do exactly that in order for it to match up with the evidence that's going to be produced? Well, your time is starting to fleet away. Let's assume that they did this DNA testing. So what does that get you? Where that gets us, and I think this is the issue before the court, is that the record is materially incomplete. And this circuit has found that where a record is materially incomplete and by no fault of the appellant, then the claim has not been adjudicated on the merits, and the court is supposed to look at the issue. We're looking at the presence now. So let's say you get the DNA test and it showed that Ms. Islam's blood was on your client's sock and got into his boot. What does that prove? It proves that a bullet went through her leg first and went into his boot. Well, it proves she got shot in the leg. I don't know that that proves the order of anything. Does it at all prove where the DNA, that it came from the bullet, as opposed to when he's walking around in his socks either before or after the shot happened? It strongly corroborates an account that he gave at trial. It would be undeniable that Ms. Islam's DNA is then in his boot, in a place you don't expect to find someone else's DNA. I understand maybe if it's on, you know, But my response to that, if I were State Prosecutor, I'd say, so what? It seemed to me like your best argument was and is that there were two people in that room. There was a guy and there were two, and there were two toothbrushes, which arguably would support the proposition that there were two people in there and he went in there and what happened was they tried to rob him, right? That was the argument. That's exactly. But the jury rejected that. I mean, it was a swear and match trial. One story on the prosecutor's side, the other story on the defense side. He testified. The jury had to figure it out, and they figured it out against your guy. And the evidence that we wanted to, and that was all obviously raised in our briefs and lower levels when this was litigated. But that was all the evidence that sought to be tested would support that theory. But the defense lawyer, maybe he didn't want to know what the DNA on the toothbrushes were. He wanted to argue about the fact there were two toothbrushes. He's already said it. The jury thinks there were two toothbrushes for two different people rather than her having two toothbrushes. He's already made the, he's already. He thought he was doing right. He was doing the best he could to try to get this fellow an acquittal or a whole jury or something. That might be the case had he said that, but he said the exact opposite. Well, but the, I don't know. He pointed this off to the detective and said, do with this what you want. He didn't say, I'd like this tested. There's a motion you can file. You can get an ex parte hearing on it. Maybe he didn't want a motion. If he gets the motion and it shows that all the DNA is hers, that undermines his own testimony. It undercuts him. I think there would be. He doesn't want that. There would need to be. He'd rather not know. There would need to be something in the record. He knows if he's lying or not. He's fine. The defense lawyer talked and he's fine. He may have known a little more or suspected a little more than what came out in the trial. May I answer that briefly? Well, sure. You answer it. If I ask a question, go ahead and try to respond. Thank you. All I would say is, again, there was in the post-conviction motion DNA testing. He said the exact opposite of that. That's all I would mention. My initial time is up. Thank you. And you have safe to rebuttal time? I have, yes. Adelphio, Ms. Adelphio. Yes, Your Honor. Are you going to explain all this to us? I will try my best, Your Honor. May it please the Court, good morning. Katherine Adelphio on behalf of the respondent, Harold Clark, the Director of the Virginia Department of Corrections. This Court should deny habeas corpus relieved to Valentino because he has failed to demonstrate that the State Court's determination was based on an unreasonable determination of the facts, and he has not demonstrated that it was based on a contrary or unreasonable application of federal law. With respect to the certificate of appealability granted by the District Courts, this Court should further find that the District Court did not abuse its discretion in denying an evidentiary hearing or further discovery to Valentino because even had the evidence come out as Valentino suggests now, it would have had nominal probative value to his defense. There is a factual matter I would like to bring to the Court's attention. Counsel just now agreed with the Court when the Court suggested that Valentino shot himself with his own gun. I'd like to note that that is even contrary to Valentino's testimony on the stand. At appendix page 276, he at first claimed that the unknown man, the unknown assailant, had possession of the gun and had control over the gun when the shot was fired.  So when he first testified on the stand, he stated the exact opposite of what counsel just argued. He testified to different things at the trial. He did. That's correct, Your Honor. But you could pick out about anything there. That's correct, Your Honor. So I just wanted to note to the Court that one instance where the very first chance he had to tell the story, his story to the jury, he did not say that the gun was in his hand at the time that it was discharged. There's also inconsistency in his testimony and statements, whether it was his gun or somebody else's gun. That's correct, Your Honor. He told Detective Elman at the time of the post-arrest interview that he repeatedly referred to the gun as my gun. And he twice told Detective Elman that he shot himself. Twice told him that? I'm sorry, Your Honor. He two times told him that he shot himself? That's correct, Your Honor. Not only that. What did the jury find about who shot who? The jury found that he shot the victim in the course of a robbery, that he maliciously wounded the victim. And that he shot himself? I don't think that it needed to reach that question. The jury necessarily found the facts in the light most favorable to the prosecution? That's correct, Your Honor. And what would that be in this case? That's all I'm asking. I think that the prosecution did not take a definitive position regarding whether or not his foot was actually shot during the struggle. The prosecution elicited from the victim that she, that the defendant was not limping at the time that he left the hotel room. And, in fact, she elicited from the victim that he was not shot during the encounter. They also elicited from the witness in the parking lot that he ran out of the hotel. And that explicitly stated that he was not limping at the time that he ran out of the hotel. Furthermore, the Commonwealth based this. That he was not limping when he left the hotel is? Is evidence that he was not hurt. Circumstantial evidence he hadn't been shot. That's correct, Your Honor. And I think that the Commonwealth's point was we don't think that he actually was hurt or he came to be hurt while he was in the courtroom. But if he is, perhaps it was a ricochet. We can't really answer that question. And I don't know that it was the Commonwealth's burden to do so. You didn't need to answer that question in order to get a conviction for malicious wounding. That's correct, Your Honor. What counted there was did he shoot the woman. That's correct, Your Honor. So the jury didn't resolve that question. That's correct, Your Honor. As far as you're concerned. That's correct, Your Honor. And it did not need to. It was sufficient for the jury to find. Well, what did the district or the circuit court, the Hague's court in the state, use to determine that counsel was ineffective? Your Honor, the state circuit court rendered a very short opinion. And it just basically stated that he was ineffective for failing to test the sock. Test what? The sock. The sock. The sock. Not anything else. Not anything else. Just the sock. Just the sock. And this court suggested that it is bound by that finding of deficient performance. And the director would assert to the court that it is not bound by that finding. What's that? This court is not bound by the state. We're not bound by that. That's correct, Your Honor. Well, that was made by a state court. It is not bound. Your Honor. You tried to appeal it and lost. Well, I wouldn't say that I lost. What do you mean you didn't lose? You tried to appeal it and the Supreme Court turned you down. The Supreme Court of Virginia only reaches questions of cross-error if it grants an assignment of error posed by the appellant. So the fact that it did not grant an appeal on the issue does not mean necessarily that it rejected the director's arguments to the court in the assignment of cross-error. It just doesn't consider them because it's not before the court once it's decided the rest of the case. That's correct, Your Honor. And explain to us why we should ignore that finding, though, that trial counsel was ineffective. Well, Your Honor, this court conducts a de novo review with respect to that issue. Why is that? The petitioner is not entitled to deference or I think that we frequently shorthand the AEDPA standard as some sort of deferential standard when, in fact, it's actually a burden of proof that the petitioner, not the respondent, must bear. And pursuant to the very language of section 2254D, it is essentially a limitation on relief unless the petitioner can satisfy and can make a showing that the State court's holding was unreasonable, either an unreasonable determination of the facts or an unreasonable I understand the argument. Do you have any case that suggests that an alternative ground for affirming a denial of habeas by a State court is reviewed de novo in this context? I understand the argument you're making, but are there cases that I can look to to support your view? And the habeas statute's part of the reallocation doesn't itself entitle the petitioner to habeas relief. An actual finding that a petitioner is entitled to relief under de novo review is required. And... In essence, you've got to show two steps, right? You've got to show that there's an unreasonable factual finding. But independent of that, once you clear that hurdle, you still have to show that he's entitled to habeas. That's correct. Right, the two-step process. You've got to go to the prejudice problem. That's correct. Well, I thought that's what you were going to say. It didn't make any difference to you. You'd accept that, but you went on the prejudice problem. So he doesn't get any relief. And all it deals with is the socks. That is also correct, Your Honor. And all it deals with is the socks. I guess my point is... So you went anyway. I thought that's what you were going to say, but you want to get up here and... That is probably... And attack the State court. I'm sorry. We usually, in these kinds of cases, we give a lot of credence to what State courts do. This Court does not need to reach the question of deficient performance, given the fact that the petitioner in this case has failed to demonstrate... I thought his best argument there is that they didn't do anything at all to test the toothbrushes. How do you deal with that? Your Honor, I think that given... It has to be tactical. On that point, you don't have anything except speculation. Trial counsel, during questioning of the victim, essentially elicited the fact that there were two toothbrushes and two pieces of deodorant in the hotel room. It would have been unreasonable... I thought the toothbrushes was the strongest. It would have been unreasonable because the victim in this case had an explanation for why she had two toothbrushes. She said that she used one basically to do her hair. Had counsel tested the toothbrush and it had come out not to be... to have some sort of male DNA on it, that would have denied him the opportunity to argue that, in fact, it belonged to a man. Not only that, but given the fact that the victim in this case was a prostitute and that there was ample testimony that she had a boyfriend, it wouldn't have been unreasonable for her to have facts in her hotel room that had male DNA on them. There would not have been any... Particularly a toothbrush. Particularly a toothbrush. The same question that was propounded to opposing counsel. Let's say they did do a test and the DNA showed there was male DNA on one of these toothbrushes. What does that prove? Your Honor, I'd say that has nominal probative value to the state circuit court's determination of prejudice, given the fact... That proves it. That shows that his story may be a bit more credible. That there were two people in the room. Nominally, Your Honor, for the same reason that I argued before. Well, that was a big deal. I mean, he said there were two people in there and they tried to rob him. And she said she was the only one there and he was robbing her and shot her. But it was reasonable for the trial counsel to not test it because had it come out not as he now reports it would, he would have been denied that avenue of argument and that suggestion that there was male DNA on... But that's not a conscious choice that the trial counsel made, apparently. I don't know that that's... This court can consider objectively whether or not trial counsel's performance or whether or not trial counsel engaged in a reasonable strategy. This court need not question whether or not it was a subjective choice that trial counsel made. As this court held in the United States versus Mason, counsel has the ability to prioritize the use of his resources, his time. And in this case, he said that he... Let me direct you specifically. In your brief, you make the argument that had the testing that's now before the court been done, that that would have deprived defense counsel of the opportunity to argue, as defense counsel did, that it was an unfair investigation. The police biased the investigation because they failed to do the testing. Same thing with the toothbrushes, that it would have deprived counsel of the opportunity to argue that there were two toothbrushes in the room, it's reasonable to assume one belonged to a man, that supports the defendant's story. But opposing counsel says that the defense counsel said at some point later on in the proceedings, I just made a mistake. I should have gone on and done the testing. Doesn't that negate the strategic decision argument? Wouldn't that go to performance anyway instead of prejudice? Your Honor, he made that statement only with respect to the testing of the sock, and that was during the post-conviction hearing, pre-sentencing, after he had moved to have forensic testing of the sock. He did not make that assertion to the circuit court with respect to any of the other items that are now at issue before the court. Where is that in the JA if you happen to have it? I do. It's at page, I believe it's 620. That's close enough. And it's the November 21, 2014 hearing, and I think it's – but I'd also note that he explained – It wasn't made during the trial. It was made during some kind of a hearing. I'm sorry, Your Honor. It wasn't made during the trial. It was made in a post-trial hearing. It was made during a post-trial hearing. Well, he may have reevaluated and changed his tune. That's correct, Your Honor. And Judge Richardson, I think that I gave you – Not contemporaneous. The wrong appendix. I'd like to point the court out to appendix 569. And there, trial counsel, during a post-conviction hearing, said, I thought that the detective was going to test the socks. And he asserted to the circuit courts that he had been focusing his energy on the back-and-forth investigation as to the firing. Presumably, he was referring to the idea that the bullets could or could not ricochet back to hit the defendant. And he also asserted to the trial courts that he was focusing on Valentino's pending charge in Chesapeake. And that was his explanation as to why he had failed to, I guess, run down with specificity or to do more to ensure that the detective was actually testing the sock. He told the circuit court, I thought he was doing it, one. And then he said, and I was focused on the investigation of the firing. We can only guess what that means. And also on Valentino's pending charge in Chesapeake. Presumably, the pending charge in Chesapeake had to do with something he did prior to his apprehension by the police with respect to the incident. So this was a hearing before he was sentenced, or is this part of the habeas procedure? It was a hearing before he was sentenced, Your Honor. There were actually two post-conviction or post-jury verdict hearings or motions filed with respect to the testing of the sock. The first was filed on October 22nd. The first motion was filed on October 22nd. At that point, trial counsel asked the court to test the sock. They had a hearing on that motion on November 1st. And then the trial court entered the conviction order, or the sentencing order, on November 2nd. And again, given that trial counsel had a client who told many different stories, and it was unclear what the evidence was actually going to turn out, it was reasonable for him. Well, not to belabor, but on JA571, they're having this discussion you just referred to, and then the court says to the defense counsel something about you could have asked it to be continued. I mean, that might have been a good basis for continuance. The defense counsel says it may have been. We made a tactical decision about how to use that, and I tried to utilize it in that manner. That's correct, Your Honor. I think, and I don't want to put words in the petitioner's mouth, I think his argument is that trial counsel's ineffective performance was not what he did after he learned that the items were not, the SOC was not tested. I think his argument was that, and not that he acted unreasonably after he learned that the SOC was not tested. I think his argument was trial counsel's ineffective in failing to ensure that the SOC was tested. And I think that given, once trial counsel learned that the SOC was not tested, he certainly followed a reasonable strategy. I'm running out of time, and I just want to briefly just reiterate to the court that the state court's finding that the petitioner was not prejudiced by any action taken by the trial attorney was not unreasonable. Valentina suggests that this was a close case. It was not a close case. This case involved a victim whose account was essentially unwavering. She did not significantly deviate from her original story. Meanwhile, Valentina's account changed over time. It was internally inconsistent, and at times it defied common sense. Moreover, his flight from the scene of the shooting could be considered evidence of his guilt, as could the bizarre messages that he sent to the victim's parents and his behavior upon his apprehension, where he was stuttering and nervous and visibly shaking. One point worth noting is that Valentina could not even... And that he took two cell phones, as he's like in this tussle with two people, apparently stopped and picked up two cell phones and walked out with them. That's correct, Your Honor. And in fact, his testimony with respect to the cell phones was inconsistent because at one point he says, the shot went off, I dropped the gun, I dropped the phone, and I panicked and I grabbed my stuff and I ran. And then he never comes back and explains how he came to actually leave the hotel room with the gun in the phone that he initially stated that he dropped. I think a very probative fact is that he initially claimed that the unknown man who attacked him was hiding behind the closet door. And it wasn't until he was confronted with the fact that in fact there was no closet door that he changed his tune and said, well, I just didn't see him as he was hiding in the closet area. And Detective Elman stated that there's no way that someone could have been hiding in the closet area and not been visible to Valentino as he claimed, both in the trial court and during his post-apprehension conversations with police officers. And the fact that there was no closet door is at appendix page 394 and his claim that he didn't see anyone because the man was hiding behind the closet door is at appendix page 386. Furthermore, his explanation as to how the victim came to be shot doesn't make any sense, just physically. And there was no evidence that he actually had a foot injury. There was pictures shown of his allegedly injured foot, but he never submitted any medical evidence. No evidence that he didn't have a foot injury? There was evidence he was shot in the foot. There was evidence that there was a hole in the boot and the Commonwealth elicited testimony that it wasn't... He failed to prove that the hole in the boot was caused by a bullet. Wasn't there blood? There was blood in the boot, but the... What blood would be evidence of an injury? It would be pretty compelling evidence. The state witness, a DNA expert, testified that she could not pinpoint when the blood came to be on the boot or when it came to be there, so there was no evidence to show that the blood actually came at the time of the shooting and was not on the boot. I'm sorry. I just want to make sure I understand what you're saying. Mr. Valentino here, there was no evidence that he was actually shot in the foot, put the boot aside? Your Honor, I see that my time has expired. I think Judge King will give me just a minute here. Obviously, you're asking questions you answer. But so there's no evidence. I mean, I'm sort of taken as a given that there was a bullet at some juncture that entered Mr. Valentino's foot, and you say that may or may not be true. He pointed to a picture of his foot that he claimed showed a bullet injury. However, he had no medical evidence of that. He wasn't treated for a bullet injury to his foot. The bullet that he claimed he pulled out of his boot, he threw out the window of his car where he put it away. I can't remember exactly how he phrased it. And the evidence from the state's forensic experts said that there was no way to know when the blood came to be put on the boot, whether the lead on the boot was the result of a gunshot. Or whether his foot was in the boot when the hole was created. Correct, Your Honor. Thank you for your consideration. Thank you very much. Mr. Haywood? Do you mind starting with that question? Where in the record we could find that evidence that you would say supports the idea that he was shot in the foot, not that the boot had a hole in it, but that his foot had a bullet enter it? Do you see what I'm saying? I'm trying to distinguish. How do I know he was shot in the foot as opposed to the boot was shot independent of his foot? I think that would come from the mark on his foot it was testified to. And there's testimony that it could be consistent with, an appearance consistent with a saline projectile. It would come from the fact that blood was inside of the boot, a place you wouldn't ordinarily expect to find blood. The fact that it was a bloody sock suggests that it was being worn when the foot was shot. And the bloody sock came from Mr. Valentino two days after the – where did the bloody sock come from? I'm sorry, I'm malperplexed by this issue. It was produced by – it was given to the detective by trial counsel. It had been given to trial counsel by a friend of Mr. Valentino's after I think the charge had been brought. When there was a hole in the foot? By a friend? I'm sorry, I apologize. By a friend of Mr. Valentino's got Mr. Valentino's sock? Yes, I believe that's correct. I think that's in the record in Greece. I mean it wasn't initially – obviously there was a day, at least a day before Mr. Valentino was arrested. It wasn't taken off of him at the time of his arrest. So there would have been a time when it would – after it happened before it was possessed by the government that it was not in the government's possession. And then a friend of Mr. Valentino's found it and gave it to his lawyer? I believe that's right. And then the lawyer gave it? To the detective. That's right. And so the evidence of the gunshot wound to Valentino is – were there pictures? Did he just testify he got shot in the foot? I mean what's the record evidence that there's actually a bullet hole there? To be totally honest, I'm drawing a blank on that. On the record, that's a part that I didn't reveal last night, so I'm drawing a blank. I know they put it on my brief and I cited to it, so it's in there. With respect to – and I think ultimately here, as we talked about, what we're getting – the real critical issue here, the turning point, is prejudice. And the question is, in this case, would this have – would this have led to a different outcome had there been testing done? Had there been a result that showed Ms. Islam's DNA was on the sock or shows that another man's DNA was there or that another man's DNA was on the toothbrushes? And you have two accounts, quite frankly, that, to be totally honest, I mean there are problems with each, not just with Mr. Valentino's. Ms. Islam was impeached on a number of different points. She lied about money being in the room. I think there was a false testimony or at least questionable testimony on a number of other points that were discussed in the brief with respect to assignments that were not granted. And there was this ricochet theory that was brought up, but I think probably almost certainly rejected by the jury. So they were left to navigate this morass, and they came out without any corroborating evidence deciding that Ms. Islam was the one who was telling the truth. They were not in possession of an entire class of evidence that, as I noted, is looked at as a gold standard for proof. I mean there is nothing, almost nothing, that's more reliable than DNA evidence, and that DNA evidence would have clearly supported Mr. Valentino's version of events. It would have cut through all of those difficulties that the court has identified with some of the other proof on either side, and it would have given the jury a clear indication of who really was telling the truth in this case. And that was the evidence that he was not, that the court, trial court, sorry, the state habeas court, prevented from being developed in state habeas because it did not have an interior hearing, did not have discretion. The Federal District Court found that the trial record was enough. It also did not order an evidentiary hearing. I don't think that the trial record was enough. This is something that could have been determined. This really could have a, it's just, far from, you know, being material, I think it's almost dispositive. Like it's, all we need to show is that this record is materially incomplete. This is material to determine a prejudice. And, you know, a prejudice standard doesn't require virtual certitude as to what the outcome would be, and I think this is exactly what would demonstrate that. The probative power of this is something that the court could have found out, that it prevented Mr. Valentino from determining, prevented a further development of the facts, and as a result I believe that the state habeas court erred, the Federal District Court erred in finding, in giving deference to the state habeas court, and this court should grant Mr. Valentino's appeal. If there's no further questions. Thank you, Mr. Haywood. Thank you very much. We'll adjourn court for the day, and we'll come down and brief counsel.
judges: Robert B. King, G. Steven Agee, Julius N. Richardson